## WILDER and HASTINGS *vs.* FONDEY and WINNE.

The taking of a judgment for a larger amount than is actually due, for the purpose of defeating another creditor, subjects the plaintiff to the penalty given by the statute of frauds, although a part of the debt covered by the judgment be actually due.

The motives of a plaintiff in entering judgment upon a bond and warrant where he has no security besides the judgment, cannot be questioned ; but where he has other security, and takes the only fund against which other creditors can proceed, his motives may be submitted to the consideration of a jury.

The statute of frauds reaches fraudulent *executions* as well as fraudulent judgments. An execution for the full amount of a *bona fide* judgment, where the whole or a part of the judgment is satisfied, is within the operation of the statute.

A bond and warrant may be taken, and judgment entered thereon to cover future advances, but if an execution issues upon such judgment for more than is actually due, it is fraudulent if intentionally done ; and whether issued intentionally or by mistake for the amount directed to be levied, is a proper question for a jury. But to entitle a party to give proof upon such point, he must distinctly state the evidence he wishes to offer, unconnected with the question of the validity of the judgment.

ERROR from the supreme court. Wilder and Hastings sued Fondey and Winne in the supreme court in a *qui tam* action, to recover the penalty given by the fourth section of the statute of frauds, (1 R. L. 76.) The declaration contained two counts. In the first the defendants were charged with having obtained a judgment against one Stephen Fondey, by fraud and collusion with him, with the intent to delay, hinder and defraud the plaintiffs of their just and lawful action, demand and damages, which on the 23d January, 1824, they put in use, as true and simple, and had *bona fide* and upon good consideration. The plaintiffs averred that on the 15th October, 1823, Stephen Fondey was indebted to them for goods sold and delivered; that on the 20th October, 1823, they commenced a suit against him by *capias ad respondendum*, upon which he was arrested, and that in February, 1824, they obtained a judgment against him for $542, 97 ; and that, at the time of the commencement of the suit and until the 23d January, 1824, he owned and possessed

divers goods and chattels of great value, to wit, of the value

of $6000. The judgment of the defendants against Stephen
Fondey was averred to have been obtained in October, 1824,
for $12,000 debt and $14,44 damages. In the *second count,*
the indebtedness of Stephen Fondey, the commencement of
the suit by the plaintiffs, the judgment obtained by them, and
the judgment obtained by the defendants, were set forth. It
was then averred, that on the 1st November, 1823, the de-
fendants sued out a *test. fi. fa.* on their judgment, returnable
in February then next, which, on the 23d January, 1824,
was delivered to the sheriff of Ontario, who was directed to
levy $6000 debt and $17,48 costs and who by virtue there-
of seized and took the goods and chattels of the defendant
therein, of great value, to wit, of the value of $6000, and sold
the same at auction; which execution it was alleged was de-
vised and contrived of malice, fraud, &c. between the plain-
tiffs therein and the defendant, to the end, purpose and intent
to delay, hinder and defraud the plaintiffs in this suit (Wilder
and Hastings) of their just and lawful action, demand and
damages, &c.; and that on the 23d January, 1824, the de-
fendants (Fondey and Winne) willingly and wittingly put in
use the said execution as true, &c. The defendants plead-
ed *not guilty.*

On the trial of the cause, the plaintiffs proved their judg-
ment against Stephen Fondey, and the issuing of a *test. fi. fa.*
thereon, tested in February, and returnable in May, 1824,
which was shown to have been delivered to the sheriff of On-
tario on the 24th February, 1824, and to have been return-
ed *nulla bona.* They also shewed the judgment in favor of
the defendants against the same defendant, docketed on the
23d November, 1823, which appeared to have been entered
on a bond and warrant bearing date the 6th November, 1821;
the issuing of the execution thereon and delivery to the sher-
iff of Ontario on the 23d February, 1824; a levy by virtue
thereof on the property of Stephen Fondey; and a sale of
the property on the 30th January, 1824. The *deputy sher-
iff* who sold the property testified, that when he levied on the
property of Stephen Fondey, he (Fondey) was engaged in
mercantile business; that he took no inventory of the goods

in the store, but shut it up and left the key with one Watson, (who he was, or how connected with either of the parties, was not shewn,) from whom or from Stephen Fondey he received the key on the day of sale; that the principal part of the goods of Stephen Fondey were bought in by agents of the plaintiffs in the execution, and that the amount of their purchases, viz. $980, was endorsed by them on the execution, and that the residue of the sales amounted to only $32,56.

The counsel for the defendants objected to the evidence of the deputy sheriff as insufficient to sustain the action, contending that any evidence in relation to the execution and sale, without proving the judgment upon which it issued to be covinous and fraudulent, was immaterial and unavailing. The circuit judge decided that the plaintiffs could not sustain their action without proving the defendants' judgment against Stephen Fondey to be feigned, covinous and fraudulent; and that without such proof, the evidence of the deputy sheriff relative to the execution and the sale under it was immaterial and unavaling. The counsel for the plaintiffs then offered (as stated in the bill of exceptions) " proof relative to the proceedings under the execution; to shew the fraudulent intent of the defendants in entering their judgment against Stephen Fondey." This being objected to by the defendants was rejected by the judge, to which decisions the plaintiffs excepted; whereupon the plaintiffs were nonsuited.

The supreme court, on application to them, refused to set aside the nonsuit, and gave judgment for the defendants, considering the question raised in the cause as substantially decided by them, when on the application of the defendants they had granted a new trial after a verdict obtained by the plaintiffs. For the opinion of the court delivered upon that occasion, see 6 Cowen, 284. The plaintiff sued out a writ or error.

The cause was argued here by

*C. Davis & S. A. Foot,* for the plaintiffs in error, and by

*H. Bleecker & A. Van Vechten,* for the defendants in error.

*For the plaintiffs in error*, the following points were made;
1.   That although the judgment was *given* upon good con-
sideration, yet if it was *entered up* with a fradulent intent, it
was within the operation of the fourth section of the statute
of frauds; 2. That although the judgment was valid, the ex-
ecution was fraudulent; and 3. That the evidence offered
ought to have been received, because it would have shewn
the intent not only with which the judgment was entered, but
with which the execution was issued; and the counsel for the
plaintiffs insisted that to subject the defendants to the penalty,
it was not necessary to shew that both the judgment and exe-
cution were fraudulent; that if the execution alone was
fraudulent, they were liable, the words *judgments and execu-
tions* not being coupled together in the fourth as they are in
the first section but being in the disjunctive; that this con-
struction must be given to the statute, or the mischiefs in-
tended to be guarded against would not be prevented, for a
judgment in its inception might be entirely fair, and yet the
execution be grossly fraudulent; that the determinations up-
on the statute were that the acts in reference to which the
statute were made must be *bona fide* as well as upon good
consideration, and that the statute is to be construed favor-
ably to prevent frauds. (Twyne's case, 3 Co. 80 b.  Cow per
434.  8 Johns. R. 452.)  Whether the act charged to be
fraudulent is so or not, is a question of fact for the jury;
sometimes it is a mixed question of law and fact, but when it
is a question of *intention,* it is proper only for a jury.  (2
Starkie's Ev. 615.  1 Bay's R. 173.)

*For the defendants in error*, it was insisted that the whole
*gravamen* of the action rests upon the action being fraudu-
lent in its concoction, and that no irregularity of the sheriff
or of the agents of the defendants in relation to the sale could
subject the defendants to the penalty created by the statute,
without shewing that they acted by the direction or with the
concurrence of the defendants.  Unless both the judgment
and execution be covinous, the defendants are not liable.  (4
East, 1.  5 T. R. 235, 420.  3 Johns. C. R. 71, 446.  4 *id.* 66,
682.  2 *id.* 307.  17 Johns. R. 402.  6 Cowen, 288.  The

offer of proof was so indefinite that the judge correctly re-
jected it. It was impossible for him to know its relevancy ;
the plaintiffs should have distinctly stated the evidence they
wished to give. Proof of proceedings under the execution
could not shew the judgment fraudulent ; and it being only
for this purpose that the evidence was offered, it ought not to
have been received.

The following opinions were delivered:

By the' CHANCELLOR. The bond and warrant of attorney
on which the judgment of the defendants was entered were
dated in 1821, long before the plaintiffs debt was contracted.
If any thing was due at the time the judgment was entered,
the defendants had a lawful right to enter up judgment and
take out execution for what was then due, and they cannot
be made liable for the penalty prescribed in the statute for
such an act; but if they had taken a judgment for a larger
amount than was due, for the purpose of defeating the plain-
tiffs' recovery, they would have been liable for the penalty,
although a part of the debt was actually due. The judgment
being entered on a bond with a penalty, the nominal amount
of the judgment must be the same, whether the whole amount
specified in the condition of the bond was or was not due at
that time. I think the court was right in supposing it ought
not to be left to the jury to decide upon the motives by which
the defendants were governed in entering that judgment. If
it had appeared that they were amply secured in some other
manner, and that it would be inequitable in them to give up
that security, for the purpose of taking the only fund against
which the plaintiffs could proceed, the question would have
been entirely different. In that case the jury would have had
a valid ground to question their motives in entering this judg-
ment. But where the party has no other means of securing
his debt, I do not think his motives in obtaining security can
legally be questioned. The cases of *Holbird* v. *Anderson*, (5
T. R. 235,) and *Meux* v. *Howell*, (4 East's R. 1,) referred
to by the supreme court, fully support their decision on that
question.

But there is a difference in this case from both the cases referred to, which does not appear to have been noticed by the supreme court. It is evident, from an examination of the second and fourth sections of the statute of frauds together, that the legislature meant to prohibit fraudulent executions as well as fraudulent judgments, as each may be used for the purposes of fraud. A judgment is a lien on the land of the defendant, and would prevent purchasers from giving its full value on the execution of another party, and might thus delay and defraud him in the recovery of his debt, although no execution was taken out for many years afterwards. If a valid judgment was obtained, and afterwards paid, in whole or in part, a creditor might be defrauded, if the parties to that judgment by collision took out an execution and levied on the goods of the defendant for the whole amount.

I am satisfied that the plaintiffs had no right to recover on the first count in their declaration. But the second count is for taking out an execution fraudulently and levying it on the goods. If the whole amount of the judgment was then due, the defendants had a perfect right to obtain a preference in that way, and their motives could not be enquired into unless it was shown that they had money in their own hands, or some other means of obtaining the debt. From the statement of the case in the report, (6 Cowen's R. 284,) I infer that the judgment was taken to cover future advances in part, and yet the execution was issued with a direction to collect the whole sum specified in the condition of the bond, together with costs. In that view of the case, although the judgment bond might legally be taken for the purpose of covering future advances, if an execution was issued after the failure of S. Fondey for more than was actually due at that time, it would be a fraud upon the other creditors if intentionally done. If it was issued by mistake for a larger amount than was intended, it would not be a fraud which could subject the plaintiffs in the execution to a penalty. From the opinion of the supreme court which was delivered on the application for a new trial it does not appear that this question was raised, and if it had been it is hardly possible

that it should have been entirely overlooked there. In addition to this, I am informed by the chief justice that the case before them did not raise the question whether an execution fraudulently issued upon a judgment which had been paid, wholly or in part, subjected the party issuing it to the penalty. The decision of the circuit judge on the second trial was made in reference to the decision of the supreme court. If the plaintiffs wished to prove facts to take the case out of that decision, the question should have been fairly presented to the circuit judge, unconnected with the question of the validity of the judgment. In *Lucas and others* v. *Nockells*, (2 Young & Jarvis, 304,) on a writ of error from the court of king's bench, in the exchequer chamber, the judges unanimously decided that it was competent and proper to submit the question to the jury, whether the goods were seized bona fide under the execution to satisfy the debt, or colorably only for a collateral purpose; and in that case the acts of the judgment creditor both before and after the levying of the execution were allowed to be given in evidence for the purpose of ascertaining his motives. If the plaintiffs in the case before us had proved or offered to prove that execution was taken out for more than was actually due at that time, I think they should have been permitted to go to the jury upon the question whether it was so issued by mistake or with a fraudulent intent.

I have had some doubts in this case whether all such evidence was not necessarily excluded by the decision of the circuit judge; but as that decision was only intended to apply to a case where the whole amount of the execution as well as the judgment was actually due, he cannot be said to have decided this question, and the same should have been fairly presented to him by the plaintiffs in a different shape before they submitted to a nonsuit. The offer to prove the judgment fraudulent, by showing the improper proceedings under the execution, was a mere evasion of the decision of the supreme court, and was properly put down by the circuit judge.

For these reasons, although I am of opinion that the plaintiffs had a right to recover, if the execution was fraudulent

and intended to hinder or delay them in the collection of their debt; even if the judgment was *bona fide*, I think the judgment of the supreme court in this case should be affirmed.

By Mr. Senator OLIVER. This case presents two questions for the consideration of the court : 1. Whether the evidence produced by the plaintiffs was competent to sustain the allegation that the defendants' judgment was fraudulent and without a valid consideration ; and 2. Whether it was competent to prove that the defendant had *wittingly* and *willingly* enforced *such* judgment by a fraudulent execution.

To bring the case within the statute of frauds, it is necessary to prove that the judgment was in fact fraudulent and without a valid consideration in its *concoction*, (4 *East*, 1, 14,) for such are the express provisions of the statute by which the penealty sued for is given, (1 R. L. 76, § 4.) The evidence produced and offered does not pretend to shew that the judgment was without a good and *bona fide* consideration ; on the contrary, it proves and offered to prove nothing more than the proceedings of the deputy sheriff under the defendant's execution at Geneva, while the defendants were in the city of Albany ; for the plaintiffs have neither proved or attempted to prove that the defendants were cognizant of those proceedings. How, then, does this evidence prove fraud in entering up a judgment on a bond and warrant executed three years previous ? Can the proceedings of the deputy sheriff under the execution, without the interference of the defendants, involve them in fraud, and subject them to a grievous penalty ? or can those proceedings, if irregular, relate back to the execution of the bond and warrant and entering up of the judgment ? Suppose the whole were *bona fide* and for good consideration, would any irregularity of the sheriff or his deputy in relation to the proceedings under the execution impugn either the *bona fides* or consideration of the judgment ? This would indeed be a novel doctrine applicable to penal statutes, and repugnant to the settled rules of law in such cases. I wish not however to be understood that I consider the proceedings of the deputy sheriff as irregular,

ALBANY,
Dec. 1829.

Wilder
v.
Winney.

for that, in my judgment, is not a point before the court: what I mean to say is, that the defendants cannot be subjected to the penalty of the statutue for his misconduct.

Again; the defendants' bond and warrant was executed about three years prior to Stephen Fondey's indebtedness to the plaintiffs, and when, for aught that appears in evidence, he did not owe one cent to any person except the defendants. How, then, can their judgment in its concoction be adjudged to have been devised of malice and covin to defraud and delay the plaintiffs in the recovery of their just debts. (1 R. L. 76, § 2.)

To sustain the second count of the declaration the *second and fourth sections of the statute* must be taken in connection. The second section declares every fraudulent *judgment and execution* contrived of malice, fraud, covin, &c. to delay and defraud creditors, &c. (only as against the persons who shall or may be hindered or defrauded thereby) to be void; and the fourth section, under which this action is brought, declares that the parties to a fraudulent judgment and execution, or who shall wittingly and willingly put the same in use, shall be subject to the penalty. The offence consists of two things which must be combined to incur the penalty: 1. A fraudulent judgment, and 2. Wittingly and willingly putting such judgment in use. Neither the evidence produced or offered tended to prove either of the particulars specified in the statute, for it is idle to contend that either can be proved by the sole acts of an executive officer to whom an execution is delivered to be executed according to law. Yet this is all the evidence produced or offered in this case.

Again; it is difficult to conceive of a fraudulent execution without good consideration upon a subsisting *bona fide* judgment for good consideration. The statute, in terms, connects the *judgment* and *execution* together, when it describes the offence as consisting of a fraudulent judgment, and wittingly and willingly putting *such* judgment in use. How put it in use? By issuing an execution thereon; for if the judgment is fraudulent, the issuing an execution thereon is a progressive step towards accomplishing the fraud; and when the execution is issued with knowledge of the fraud, the pre-

son who does it, or causes it to be done, becomes a partaker in the fraud, and liable for the penalty.

But the plaintiffs contended that the judge erred in withholding the evidence produced by the plaintiffs from the jury. This, in my judgment, depends upon the sufficiency of the evidence to prove the plaintiffs' declaration. The offence complained of is created by the statute, and is clearly a question of law for the court to determine, whether the requisites prescribed by the statute to make out the offence have been proved. (9 Johns. Rep. 339.) Then if the evidence does not come up to the requirements of the statute, there was no matter of fact proved for the jury to pass upon. With respect to the evidence offered as stated in the bill of exceptions and overruled, there was no specification of the facts meant to be proved to shew a fraudulent intent in entering up the judgment, and of course the relevancy of the evidence does not appear. How then could the court admit it? The party who offers evidence, is bound to point out its relevancy, to enable the court to judge of it. Hence it follows that the general offer to prove the proceedings under the execution, without specifying what these proceedings were, did not enable the judge to determine that the evidence when taken would have been relevant, and therefore the offer was properly rejected.

Many suggestions of fraud were thrown out by the plaintiffs' counsel in argument against the defendants, but as there is no evidence to warrant them, and the defendants were not put upon their defence, it would be improper to allow any weight to such suggestions; for that would be in a degree to prejudge the merits of a defence, which the defendants have not been required to present.

For these reasons I am of opinion that the judgment of the supreme court ought to be affirmed.

By Mr. Senator Todd. A bill of exceptions confines the inquiry to the question which was presented to and decided by the judge. This case is presented and was argued in a manner calculated to mislead, without we particularly examine the question presented and decided by the circuit judge.

ALBANY,
Dec. 1829.

Wilder
v.
Winney.

The evidence which the plaintiffs offered must have been under the first count in the declaration; it was offered to prove the *judgment* fraudulent. The decision of the judge must have been upon the offer thus made of evidence under the first count, and he undoubtedly intended to decide that question and nothing more. When, therefore, he uses the language, " that the plaintiffs cannot sustain their action without proving that the defendant's judgment was fraudulent," the expression must be understood as applying to the evidence offered under the first count, and his meaning must be restricted accordingly—that the plaintiffs could not sustain their action on the *first count* without shewing the judgment fraudulent. Evidence had been offered of the bond and warrant of attorney, their date, the time which had elapsed between their date and the entering up of the judgment, the time of issuing the execution, the time when the plaintiffs' cause of action accrued against Stephen Fondey, and the commencement of the suit against him. These were circumstances which, in connection with the conduct of the defendants under their execution, would have been proper for the consideration of the jury; but the plaintiffs' counsel did not insist upon referring to the jury the consideration of all the facts, but reposed themselves upon their exception to the opinion of the judge, which presents the single question whether the conduct of the defendants under their execution, unconnected with other evidence, is competent to shew the intent of the defendants in entering up their judgment averred in the first count of the declaration.

The statute applies to a *fraudulent* judgment, and none other. It must be fraudulent in its inception, and no subsequent conduct of the parties can change its character from what it possessed at the time it was perfected. The abuse of a valid judgment may be the subject of complaint, but to such a case the statute does not apply, and the penalty is not incurred. A judgment which is regularly entered is not under all circumstances *bona fide* and upon good consideration. A party affected by it may impeach its *bona fides*. It is, however, *prima facie* fair and honest; and so long as this character remains, an execution issued upon it will be justified,

and the conduct of the parties under it cannot render them liable to the penalty inflicted by the statute, unless the evidence goes beyond the execution, and proves the judgment itself fraudulent. If the bond and warrant of attorney upon which the judgment was entered were given to enable the defendants to avail themselves of a preference over other creditors, and in carrying into effect such intent other creditors were necessarily delayed and hindered in the collection of their debts, it could not be fraudulent; for such a preference may be lawfully given and lawfully exercised in collecting money actually due.

It is well settled by the decisions under the English statute of 13th Eliz. of which ours is nearly a transcript, that it is not fraudulent for a debtor to give preference to one creditor over another. The case of *Holbird* v. *Anderson*, (5 T. R. 235,) was this: Shepherd had a judgment against Charter; Charter was also indebted to Holbird, and knowing that execution was about to issue on Shepherd's judgment, confessed a judgment to Holbird, on which execution was issued and delivered to the sheriff two hours before Shepherd's. The sheriff levied upon Shepherd's execution, and returned Holbird's *nulla bona*. Holbird then sued the sheriff for a false return, and his defence was put upon the ground that Holbird's judgment and execution were void under the statute, being with intent to delay and hinder Shepherd in the collection of his execution. It was held that there was no fraud; that it was a lawful preference in which there was no illegality or injustice. The case of *Meux qui tam* v. *Howell*, (4 East, 1,) is more directly applicable to the case now under consideration. It was a case, like the first count in the declaration in this cause, to recover the penalty imposed by the statute for putting in force a fraudulent judgment against J. Norton. The facts were these: The plaintiff was landlord of Norton and had distrained for rent, and had also an account against him. The defendant being also a creditor of Norton, sued him. He was surrendered by his bail. Finally he gave a judgment for the benefit of all his creditors, upon which execution issued, and Norton's goods were taken and sold. The question, under these circumstances, was

whether the judgment against Norton was not fraudulent within the statute. Lord Ellenborough, in discussing the question, said, " It is not every feoffment, judgment, &c. which will have the effect of delaying or hindering creditors of their debts, that is therefore fraudulent within the statute; for such is the effect *pro tanto* of every assignment that can be made by any one who has creditors." Grose, justice, observed, that " if the judgment be given *bona fide* and upon good consideration, it is not within the act." The same principle seems to be recognized and settled in our own courts. In the case of *Mackie* v. *Cairns*, (5 Cowen, 547,) the cases on this subject were fully considered, and the doctrine recognized.

The second count in the plaintiffs' declaration was intended to present the question, whether an execution may not be fraudulent although issued upon a judgment which was given *bona fide* and for good consideration. Executions as well as judgments are named in the act. The mischief which was intended to be reached and remedied by declaring the judgment alone void, would not be reached and a remedy applied to the extent which was intended by the legislature, if executions were not placed on the same footing as judgments. The term executions, I apprehend, would not have been used, unless it had been supposed that they might be feigned, covinous and fraudulent, and put in use as true and *bona fide*, to delay and hinder creditors in the collection of their just debts. Suppose a judgment *bona fide* for $10,000 is subsequently paid and settled so far that only $100 remains due, the plaintiff then issues an execution for the full amount of the judgment, and sweeps all the defendant's property from the reach of creditors, I should have no doubt but such an execution was fraudulent; and I can see no difference in principle between putting in force such an execution and putting in force a judgment which is confessed for $10,000, when only $100 is due. The fraud is the same, the mischief the same, and being embraced in the act, the penalty should be the same. This question was discussed by the counsel on both sides, on the argument of this cause, although, as I understand the case, it is not raised by the bill of ex-

ceptions; and as this court will not decide any question except such as is brought here for review from the opinion of the court below, it is unnecessary now to decide it.

From the examination which I have been able to give this case, I have come to the conclusion that the plaintiffs could not sustain their action on the first count in the declaration, without shewing the judgment confessed by Stephen Fondey to the defendants in this suit fraudulent, and that the acts of the defendants under the execution issued upon that judgment are not of themselves sufficient evidence of fraud from which a jury would be warranted in finding the judgment fraudulent.

I am therefore of the opinion that the judgment of the court below ought to be affirmed.

And this being the unanimous opinion of the court, the judgment of the supreme court was thereupon *affirmed*, with costs.