## HOFFMAN, BURNESTON & CO. v. BENJAMIN MACKALL AND OTHERS.

Where a debtor, in contemplation of insolvency, makes an assignment or conveyance of his property to trustees for the benefit of all his creditors, at a time when a part of his creditors are expected within a few days thereafter to obtain judgments against him, is not *per se* fraudulent and void, upon the ground that the deed contains a provision which authorizes the trustees to sell the property at *private* or at public sale, and *upon credit,* as they shall deem most expedient and beneficial to the creditors.

When a man finds that he has become insolvent, the most *just* and *equitable* act he can do is to surrender his property in trust for the benefit of all his creditors; and the *hindrance* and *delay* which such an assignment may occasion to the prejudice of particular creditors, seeking a priority of liens on the debtor's property by judgments at law, and speedy collections by sales on execution, are simply unavoidable incidents to a *just and lawful act,* and not being fraudulent in the contemplation of the law, do not bring the instrument of assignment within the operation of the statute of frauds.

The delivery of a deed of trust by the grantor to the county recorder for record, for the grantees and as their deed, is a sufficient delivery, where the grantees before the execution of the deed had agreed to accept.

Hoffman, Burneston & Co. *v.* Mackall and others.

A deed thus delivered, takes effect from the time of delivery, whether it was a deed of trust *absolute* or *in the nature of a mortgage*.

The omission of the recorder to indorse upon the deed the time when it was left with him for record, because his fees were not paid, he having assented that the grantor might leave the deed for record, on the remark, that the grantee would call for it and pay the recording fee, cannot be allowed to defeat the title as between the grantees and subsequent judgment creditors of the grantor; for the recorder ought to have made that objection when the deed was left with him, and not having made it then, it is too late for him to make it afterwards.

There is a well settled distinction between an absolute deed of trust and a deed of trust in the nature of a mortgage; the one is *conditional and defeasible*, the other is *unconditional and indefeasible* for the purposes of the trust.

Where the grantor in a deed of trust makes it in contemplation of insolvency, and authorizes the grantee, after paying the expenses of the trust, to make a pro rata distribution of the proceeds of the trust property among the grantor's creditors, such deed is absolute, and the conveyance is to a trustee for the purpose of raising a fund with which to *pay debts*, as distinguished from a deed of trust in the nature of a mortgage to *secure debts*.

Such absolute deed should be recorded in the book denominated "record of deeds."

IN Chancery. Reserved in the District Court of Belmont county.

The material facts in this case are the following:

On the 15th day of May, 1852, Benjamin Mackall and wife executed and acknowledged a deed, purporting to convey certain premises therein described to John T. Mackall and Kelion Hager, in trust.

The object of the trust is thus defined by the deed:

" Now the uses, and trusts, and purposes, and objects of this conveyance, are these : That, whereas, I am indebted to sundry persons, and copartnerships and corporations in large amounts of money, some of which persons and partnerships are hereinafter named, and being apprehensive that, without a just and fair distribution among my creditors of my property, I shall not be able in a just and fair manner to discharge my obligation to them, I have granted, etc., to be held by them in trust, to and for the benefit of all my creditors, to be divided between them pro rata. And to that full and complete extent, the said trustees are hereby authorized and empowered to sell, either at public or

private sale, and with such notice of sale, and in such manner as they shall think most expedient and beneficial to my creditors, the above described tracts of land; and out of the proceeds of said sales to pay, as soon and as fast as they may be realized — 1st. The costs of this assignment, and the reasonable costs, expenses and compensation to the said trustees, for the execution and carrying into effect the trust aforesaid. 2d. That they pay out the balance of said fund equally and pro rata to all my creditors, in proportion to the amount of their respective demands, hoping and expecting that the trust fund hereby created will satisfy all my debts, leaving a balance; which said balance, should it arise, the said trustees are to pay over to the undersigned, B. Mackall, or his personal representatives."

On the afternoon of the same day the deed was executed, Benjamin Mackall, the grantor, took the deed to the county recorder's office, and, laying it upon a table in the presence of the recorder (who was engaged with other persons at the time), and with his assent that he, the grantor, might lay the deed down there, remarked to the recorder, that there was a deed Mr. Kelion Hager wished him to record, and wished it done so that Hager could get it during the court; that Hager would call for it during the sitting of the court and pay him for recording it.

The recorder, after Mackall the grantor had left, took up the deed and looked at it, and finding it to be of considerable length, and not having received his recording fee, laid it down upon the table again without indorsing upon the deed the time it was left for record, and without recording it. The deed laid upon the table in this way until the 19th of May, when the recorder, refusing to enter the indorsement as of the day the deed was left with him, of his own motion entered it as of the 18th of May.

The deed was recorded May 21st, in the set of books denominated " record of mortgages."

The grantees accepted the conveyances with the trusts it imposed, as they had agreed to do before it was executed.

At the March term, 1852, of the court of common pleas of Belmont county, Samuel B. Wilson commenced suit against B. Mackall, as the surety of one Bailey, on a penal bond for $400;

at the same term, Long & Byrne commenced their suit against the same defendant; and he had before that time given warrants of attorney to the complainants, and to Russell, Mercer & Co., and Slingluff & Ensy, to enter up judgments for their several claims at the May term, 1852.

The May term, 1852, of the court of common pleas of Belmont county commenced on the 18th day of the month.

Judgments were rendered at this May term against B. Mackall in all the suits, and on the warrants of attorney mentioned. The judgments in favor of complainants, and Slingluff & Ensy, were entered up on the first day of the term, May 18th; and the judgment in favor of Russell, Mercer & Co. on the 24th of May.

One of the parties claiming adversely to the judgment creditors, examined B. Mackall, the grantor, as a witness. In this examination he states, in substance, that he made the deed of trust in order to pay all his creditors alike, without sacrificing his property, and that in making the deed, he believed that his *own* creditors would be paid before the creditors of those he had indorsed for, or was surety for, and that he don't know that he would have made the deed of trust had he not owed surety debts.

Hager, the trustee, says: "Mr. Mackall told me that he was in debt, and was unable to pay readily; that he wished to make an assignment, and wished me to act as his trustee; and his object was, in doing this, that one creditor should not have the advantage over another; that he wanted to pay his own debts; that he was surety for one Bailey, who was guardian for some minor children; he had squandered their estate, and the heirs were about to sue him; and he thought it very unjust that they should come in and sweep away his property from his creditors. The heirs spoken of were the children of John Wilson."

J. T. Mackall, the other trustee, says of B. Mackall: "He stated to me that he did not want his property sacrificed to pay a part of his debts, and those who were willing to wait, to lose; he thought in the hands of a trustee it would pay more. He stated that there was a suit against him in court, but that he did not want his property sacrificed."

The returns on the executions show, that in July 1852, there

was no other property on which to levy but that in the deed described.

The object of the bill is to set aside the deed and obtain satisfaction of the judgment recovered by the complainants against B. Mackall.

The general creditors resist such action, and claim their equitable rights as beneficiaries of the trusts created by the deed.

The complainants insist, in the first place, that the deed is a deed of trust, in the nature of a mortgage, and did not take effect until entered for record, and that it was not delivered or entered for record until after the recovery of the judgments; and that they have the first lien. And secondly, that the deed was fraudulent.

*D. Peck*, for complainants, cited : O. L. Vol. 49, p. 103 ; Swan's Stat. sec. 7, p. 266, sec. 4, p. 778 ; 2 Johns. Ch. Rep. 181; 4 Kent. Com. 310, note a; 19 Ohio Rep. 212 ; 1 Johns. Ch. Rep. 240 ; 1 Sand. Ch. Rep. 4; 1 Sand. Rep. 83 ; 12 Barb. S. C. Rep. 168 ; 5 Sand. Rep. 282 ; 2 Comst. Rep. 365 ; 14 Barb. S. C. Rep. 39 ; 3 Monroe Rep. 2 ; 8 Dana Rep. 263.

*C. C. Carroll*, for defendants, cited : 7 Ohio·Rep., part 2d, 247 ; 4 Sand. S. C. Rep. 252, 311, 287, 280 ; 5 Ohio Rep. 122; 10 Paige 227, 229, 365 ; 12 Barb. 168, 175, 180, 186 ; 3 Am. Law Jour. 100 ; 1 Am. Lead. Cases 80, 84, 87 ; 4 Mason Rep. 210, 212 ; 3 Maul. & Selw. 372, 375 ; 4 Johns. Ch. Rep. 529 ; 13 Ohio Rep. 30 ; 11 Wend. 200 ; 3 Sand. Rep. 554 ; 1 Ohio St. Rep. 50 ; 2 Ohio Rep. 400 ; 8 Ohio Rep. 391 ; 13 Ohio Rep. 31, 40 ; 11 Wheat. Rep. 78 ; 2 Barb. 12, 24 ; 4 Sand. Ch. Rep. 476 ; 2 Kent. Com., 7th ed., 688, 689, note ; 3 Ohio Rep. 351, 532—5 ; 2 Johns. Ch. Rep. 307 ; 2 Gall. 557 ; 5 Wend. 235, 420 ; 4 East. 1; 3 Price 6 ; 1 Bin. Rep. 502, 517, 519; 2 Bin. Rep. 180, 183, 190 ; 5 Tenn. Rep. 235 ; 24 Wend. 280 ; 2 Comst. Rep. 371, 372 ; 9 Paige 398, 403, 405; 1 Sand. Rep. 83 ; 5 Barn. & Cress. 671 ; 12 Eng. Com. L. Rep. 351 ; Smith on Cont. 9 ; 4 Yo. & Col. 130 ; 4 Myl. & Cr. 660 ; 11 Mees. & W. 146 ; 15 Wend. 657 ; 2 Mass. Rep.

452; 10 West. Law J. 252; 4 Kent. Com., 7th ed., 138, 323, 500; 18 Conn. Rep. 257; 19 Ohio Rep. 20, 212, 215; 2 Story's Eq., sec. 1018; 1 Ohio St. Rep. 243; 2 Ohio Rep. 266; 7 Wheat. Rep. 556, U. S. Cond. 344; 7 Pet. Rep. 609; 6 Barb. 94; 12 Ala. Rep. 487; 20 Johns. Rep. 187; 15 Wend. 661; 10 West. Law J. 253; 3 Monroe Rep. 2; 8 Dana Rep. 263; 13 Ohio Rep. 40.

BARTLEY, J. This is a proceeding in chancery, instituted by the complainants as judgment creditors of Benjamin Mackall, to set aside a deed of conveyance, made by him to trustees, in contemplation of insolvency. The terms of the conveyance, the object of which is expressly declared to be the benefit of all the grantor's creditors, are expressed in the following language, to wit: "And to that full and complete extent, the said trustees are hereby authorized and empowered to sell, either at *public* or *private* sale, and with such notice of sale, and in such manner as they shall think most expedient and beneficial to my creditors, the above described tracts of land. And out of the proceeds of said sales to pay as soon and as fast as they may be realized: 1st. The costs of this assignment, and the reasonable costs, expenses and compensation, to the said trustees, of the execution and carrying into effect the trust aforesaid. 2d. That they pay out the balance of said fund equally and *pro rata*, to all my creditors, in proportion to the amount of their respective demands, *hoping and expecting* that the trust fund hereby created, will satisfy all my debts, leaving a balance, which said balance, should it arise, the said trustees are to pay over to the undersigned, B. Mackall, or his personal representatives." It appears that at the time of the execution of the deed, judgments were about to be taken against the grantor, one of which was for a security debt; and that he declared that he intended the conveyance to be a security for his *own* debts, and not for his surety debts; and also that he desired by the conveyance to prevent a sacrifice, thinking that in the hands of trustees the property could be made to go further, etc.

The grounds upon which the complainants seek to set aside the conveyance, are the following :

1st. That there was no actual delivery of the deed, either to the trustees, or the beneficiaries of the trust, prior to the judgments of complainants.

2d. That the deed is a deed of trust, *in the nature of a mortgage*, which could not take effect until entered for record ; that it was not entered for record until after the recovery of the judgments ; and, therefore, that the jndgments have the first lien.

3d. And that the deed is fraudulent and void as against creditors.

Of these in their order :

1st. The delivery of the deed to the recorder for the grantees, and as their deed, was sufficient evidence of delivery. It has been held, that the delivery of a deed to a third person for the use of the grantees, was a sufficient delivery. And if proof of acceptance by the trustees were necessary in this case, the evidence was sufficient. It is shown, that the trustees agreed to accept before the execution of the deed. In *Mitchell* v. *Ryan*, 3 O. St. Rep. 377, it was expressly ruled, that " simple assent to the conveyance given, even before its execution, is a sufficient acceptance." And if the doctrine of this case of *Mitchell* v. *Ryan* is to be followed, there is an end to the question on this point. And this is strengthened by *Church* v. *Gilman*, 15 Wend. 656 ; *Gamons* v. *Knight*, 12 Eng. Com. L. Rep. 351.

2d. There is a manifest and well settled distinction between an *unconditional deed of trust*, and a *mortgage* or *deed of trust in the nature of a mortgage*. The former is an *absolute* and *indefeasible* conveyance of the subject matter thereof, for the purpose expressed ; whereas the latter is *conditional* and *defeasible*. A mortgage is the conveyance of an estate, or pledge of property, as security for the payment of money, or the performance of some other act, and conditioned to become void upon such payment or performance. A deed of trust *in the nature of a mortgage*, is a conveyance in trust *by way of security*, subject to a condition of defeasance, or redeemable at any time before the sale of the property. A deed conveying land to a trustee as

Hoffman, Burneston & Co. *v.* Mackall and others.

mere collateral *security* for the payment of a debt, with the condition that it shall become void on the payment of the debt when due, and with power to the trustee to sell the land and pay the debt in case of default on the part of the debtor, is a *deed of trust in the nature of a mortgage.* By an absolute deed of trust, the grantor parts *absolutely* with the title, which rests in the grantee unconditionally, for the purpose of the trust. The latter is a conveyance to a trustee for the purpose of *raising* a *fund to pay debts;* while the former is a conveyance in trust for the purpose of *securing a debt,* subject to a condition of defeasance. *Woodruff* v. *Robb et al.,* 19 O. Rep. 216 ; 1 Hilliard on Mortgages 359. It is manifest from this distinction that the conveyance in controversy, in this case, was not a mortgage, or deed of trust in the nature of a mortgage, but an absolute deed of trust; and, therefore, that it took effect from the time of its delivery, on the 15th day of May, and prior to the recovery of the judgments by the complainants.

But even had it been a deed of trust in the nature of a mortgage, it would have taken effect on the 15th of May, for it was delivered for record on that day. The neglect of the recorder to mark the time of the delivery, because he did not know who would pay his fees, cannot be allowed to defeat the delivery, *for he ought to have made that objection when the deed was delivered to him;* and not having made it then, it was too late to make it afterwards. The maxim of the law, that he who does not speak when he ought to speak, shall not be permitted to speak when he would speak, would seem to be applicable in the case before us.

The deed became effectual the moment it was delivered, whatever may have been afterwards done, or left undone. It is immaterial, in this case, whether the deed was *recorded* in the proper book or not. An unrecorded deed is, of course, good, except as against subsequent *bona fide* purchasers. It may be added here, that this deed, being an absolute and indefeasible conveyance in trust, and not *in the nature of a mortgage,* should have been recorded in the book denominated "*record of deeds.*"

3d. Was the conveyance *fraudulent,* and therefore *void* by the operation of the statute of frauds ? It is urged on behalf of the

complainant, that the deed is shown to be fraudulent and void as to creditors, first, by the *inherent terms* of the instrument itself; and second, by *its terms*, taken in connection with extrinsic facts attending its execution and delivery.

The conveyance was made in contemplation of insolvency, and recites that the grantor was apprehensive that he would not be able to make a fair distribution of his property without an assignment. And it authorizes the sale of the property by the trustees, " either *at public* or *private sale*, and with such notice of sale, and *in such manner*, as they shall think most expedient and beneficial to his creditors ;" and out of the proceeds to pay, first, the costs, and the expenses and compensation of the trustees ; and second, that the balance be paid out to all his creditors in proportion to the amount of their respective demands, *hoping* and *expecting* that the fund would be sufficient to pay all and *leave the grantor a balance*, which it is provided, *should be paid back to him*.

The intrinsic evidence of fraud in the deed relied on is, that, by its terms, the trustees had the discretion to sell at *private sale*, and *upon credit*, and that provision was made that, in case any surplus should remain after payment of debts, it should be paid back to the grantor.

The statute for the prevention of frauds and perjuries provides, that every gift, grant, or conveyance of property made or obtained with intent to defraud creditors, shall be deemed void and of no effect. Whether there was fraud in the transaction presented in this case, is a matter of fact to be established by proof, and the *onus probandi* is thrown upon the party impeaching the deed. And where an instrument is ambiguous or indefinite in its terms, and admits of two constructions, one of which renders it inoperative and void, and the other operative and valid, the latter is to be adopted in preference to the former.

It is argued, that an assignment in trust for creditors, which by its provisions tends to hinder and delay creditors, is fraudulent and void. The provision of the statute of the 13th Elizabeth, which was held to be declaratory of the common law in England, and which is said to have been followed literally in the statute of

frauds in New York, declares "every conveyance or assignment," etc., "made with intent to hinder, delay, or defraud creditors," etc., void. The provision in the Ohio statute omits the words "*hinder and delay*." But I am not aware that this difference of phraseology is the foundation of any material distinction, in legal effect, between the English statute and that of Ohio. That *hindering* and *delaying* of a creditor which would bring an assignment within the operation of the statute of England, would, I apprehend, constitute a fraud under the statute of Ohio. As early as the case of *Pickstock* v. *Lyster*, 3 Maule & Selwyn's R. 371, where a person being insolvent had, pending a suit against him by one of his creditors, assigned all his effects to trustees for the benefit of all his creditors, it was held that the assignment, although it prevented the suing creditor from reaching his debtor's effects by legal process, was not fraudulent within the operation of the statute of frauds, although made with intent to delay the plaintiff in the suit, in the collection of his debt by legal process. It is true, that such an assignment would seem to be in violation of the mere literal import of the English statute. But the effect of almost every assignment, even where creditors are to be paid *pari passu*, is, in one sense, to hinder and delay them in the collection of their debts, by withdrawing the property from the reach of any legal process to which they may wish to resort. This statute is to be construed according to its reasonable intent and object. And assignments, although designed manifestly to deprive particular creditors of speedy remedies at law, and thus hinder and delay them in the collection of their debts, or to deprive some of that full satisfaction of their debts which, by their superior diligence in prosecuting their suits, they would otherwise certainly have obtained, are upheld as valid and effectual. Although, in one sense, there is a manifest intent to hinder and delay one or more creditors in such assignment, yet there is no intent to cheat or defraud them; and, by a reasonable construction, such hindrance and delay only as would operate as a fraud, and are designed as a fraud, come within the operation of the statute.

When a man finds himself in failing circumstances and unable

to pay all his debts, he can do no act *more just and equitable* than to surrender and assign his property in trust for the benefit of all his creditors.    In such situation, all the law can reasonably demand is a faithful application of all his property to the payment of all his debts; and when this object is accomplished by an assignment or deed of trust, for the benefit of all his creditors, the hindrance and delay which may operate to the prejudice of particular creditors, is simply an unavoidable incident to a just and lawful act.    And such mere incident to such laudable act, cannot be held to vitiate the transaction as fraudulent, until the maxim, that equality is equity, in the distribution of the property of an insolvent, shall have been repudiated, and the highest act of justice which can be done by a debtor in contemplation of insolvency, shall be deemed an act of dishonesty.    If authority be necessary to sustain so plain a proposition, reference is made to *Muir* v. *Howell*, 4 East's R. 1; *Wilder* v. *Winne*, 6 Cow. 284; and 4 Wend. 100.

There are certain provisions in the terms of an assignment or deed of trust, made in contemplation of insolvency, which have been determined to be *per se* fraudulent, as follows, to wit: First, a provision in the instrument postponing the period of sale and payment an unreasonable time, will have that effect; and the reasonableness of the delay may depend somewhat upon the character of the property and the circumstances of the case.    *Hofner* v. *Irwin*, 1 Iredell 490, 496; *Hardy* v. *Skinner*, 9 Id. 191; *Rundlett* v. *Dale and Trustee*, 10 N. Hamp. R. 458 and 465; *Farmer's Bank et al.* v. *Douglass et al.*, 11 Sm. & Marshall's R. 472 and 539; *Ward, etc.*, v. *Trotter, etc.*, 3 Monroe's R. 1; *Johnson* v. *Thweatt*, 18 Ala. R. 745; *Dana* v. *Bank of the U. States*, 5 Watts & Serg. 224.    Second, stipulations tending to coerce the creditors into a compromise or release of a part of their debts, or imposing other unreasonable conditions as the terms on which they are to be allowed to participate in the distribution of the trust fund, or reserving to the assignor the control and disposition of the uses to which the trust property is to be applied, will render the assignment void.    *Hyslop et al.* v. *Clark et al.*, 14 Johns. R. 458; *Grover et al.* v. *Wakeman*, 11 Wend. R.

187; *Currie* v. *Hart,* 2 Sandf. 353. Third, the reservation of a use or benefit to the grantor or his family, or any one not a creditor, will invalidate the instrument. *Mackie* v. *Cairns,* 5 Cow. R. 549; *Murray* v. *Riggs,* 15 Johns. R. 571. So, also, the reservation of the surplus after paying certain specified debts, leaving other debts unpaid. *Goodrich* v. *Downs,* 6 Hill 438; *Barney* v. *Griffin,* 2 Comst. 365. Fourth, the reservation of a power of revocation, or the introduction of such limitations and contingencies as give the debtor a control over the property, or enable him to defeat the conveyance. And fifth, a provision, that the transaction is to be kept secret until the debtor has secured certain advantages to himself, or has an opportunity to get beyond the reach of process issued by other creditors, or by which the deed is not to be registered, or become effectual unless other creditors bring suit, will render the instrument void. *Hofner* v. *Irwin et al.,* 1 Iredell 490.

The deed of trust, in the case under consideration, is free from all these several provisions above mentioned, which have been adjudged fatal to the validity of instruments of that character. There was no unreasonable postponement of the period of sale and payment provided for. There was no secrecy from the creditors enjoined. There were no coercive conditions imposed upon the participation in the trust property. And there was no reservation of a use or benefit to the grantor, or other person, to the prejudice of any of the creditors. The reservation to the grantor of the surplus, should there be any, after payment of *all* the creditors, was not fraudulent. It was no more than the law would have required without any such provision in the deed. *Hall et al.* v. *Denison et al.,* 17 Verm. R. 311 and 318. The discretion given to the trustees to sell at *private* as well as at *public sale,* imposed no improper disadvantage on the creditors; on the contrary, it was a discretion calculated to advance their interests, in case of insufficiency of property to pay all the debts.

It is insisted, however, that the provision in the deed, which gave the trustees a discretion as to *the manner* of the sale, allowed them to sell *on credit;* and that authority to the trustees to sell on credit was *per se* fraudulent, and therefore invalidated the

instrument.   It must be conceded, that although the deed does
not prescribe any particular period of credit, yet it did, in effect,
authorize the trustees to sell on such reasonable credit as might
be found " *expedient and beneficial* to the creditors."   And the
question properly arises, whether a provision simply *authorizing*
a sale by trustees on credit, in such an instrument, in case the
trustees shall deem *it beneficial* to the creditors, renders the deed
upon its face fraudulent and void.   According to the adjudica-
tions in the State of New York, such would seem to be its effect.
*Nicholson* v. *Leavitt*, 2 Selden's R. 510 ; *Burdick* v. *Post et al.*,
12 Barb. 168.   But the effect of the adjudications in the other
States shows a manifest weight of authority against this position.
*Abercrombie* v. *Bradford*, 16 Ala. R., New Series ; and *Shakel-
ford* v. *P. and M. Bank of Mobile*, 22 Ala. R. ;   *Grimel et al.*
v. *Adams et al.*, 11 Humph. R. 285 ;   *Christopher* v. *Covington
et al.*, 2 B. Monroe 358 ; *Hofner* v. *Irwin*, 1 Ired. 490 ; *Rund-
lett* v. *Dale and Trustee*, 10 N. Hampshire R. 458.   The rigor
of the adjudications in the supreme court, and the court of ap-
peals in New York, may be somewhat accounted for, by the con-
sideration that *preferences* to one or more creditors over others in
such assignments, are upheld in that State, which is not the case
in Ohio and some of the other States ; and to avoid the injustice
resulting from such preferences, resort has been had to excessive
stringency to invalidate them.   The cases of *Nicholson* v. *Lea-
vitt*, and *Burdick* v. *Post et al.*, above cited, were cases of *pre-
ferences* to creditors.   And in the latter case, Mr. Justice Bar-
culo, in delivering the opinion of the majority of the court,
remarks :  " The rule authorizing preferences had, however,
hardly become established, ere the courts, perceiving the danger-
ous power vested in failing debtors, of, rewarding friends and
punishing exacting and importunate creditors, began to regret its
admission, and exercise their ingenuity in imposing limitations
and restrictions."   And it appears that the courts in that State,
to avoid odious preferences, have adopted a literal construction
of their statutory provision on the subject of conveyances, " with
intent to hinder, delay," etc., " creditors," etc., " of their lawful
suits, damages, debts," etc.   And it may be remarked, that the

doctrine in New York was not adopted with perfect unanimity. In *Burdick* v. *Post*, there is an able dissenting opinion by Mr. Justice Brown ; and the lucid opinion of Mr. Justice Duer, giving the opinion of the superior court of the city of New York, in *Nicholson* v. *Leavitt*, 4 Sandf. R. 268, is not satisfactorily answered by the opinion of the court of appeals overruling it. 2 Selden's R. 510. The excessive rigor of the adjudications in New York on this subject, is shown by the application of the rule to cases of conveyances and assignments, where the debtor has not *prescribed* or *required* any particular period of credit, but simply given *express* authority to the trustee to sell *on credit*, in case it shall be found most expedient and beneficial to the creditors.

Now, in the case before us, the terms of the conveyance do not *enjoin* or *require* a sale upon *credit*, with a view to the interest of the grantor, but simply *authorize* it with a view to the interest of the creditors. Had the instrument been wholly silent as to the *terms* or *manner of sale*, the authority of the trustees to exercise a discretion in regard to a sale *for cash*, or *on a reasonable credit*, as the interest of the creditors might require, wou'd have been unquestionable, upon the ordinary principles which govern the duties of trustees. And upon no sound reason can a deed be set aside, because it expressly provides for a matter which would be implied by law, in the absence of any express provision. In the case of *Rogers et al.* v. *De Forest et al.*, 7 Paige's Ch. R. 273, Chancellor Walworth said : " The power to sell *on credit*, is a power which is usually implied in trusts of this description, and it is not a violation of the provisions of the revised statutes relative to uses and trusts. Neither does the creation of such a trust tend, in any manner, to delay or hinder the creditors of the assignor in the collection of their debts. For if the assignees do their duty, they will not sell the property on credit, without obtaining therefor the difference in value between a sale for cash and a sale upon credit. And the creditors, should they think proper to do so, have a right to insist that such securities should be immediately converted into money, and applied towards the satisfaction of their respective debts, or as soon as they shall deem it for their interest to have it done." Although

it is the duty of a trustee under an assignment for the benefit of creditors, to proceed, without delay, and in a proper manner, to convert the property into money and pay the debts, yet it has never been held that he is bound to proceed to make forced sales after the manner of a sheriff holding property on execution, unless the terms of the assignment or manifest interest of the creditors require it. All that is required of a trustee is, that he act in good faith, exercise a fair discretion, and do in the premises, according to his instructions, what a man of ordinary prudence and care would do in regard to his own business. Story Eq., sec. 1272. A sale by a trustee upon credit, may be an act of *good faith* and the proper exercise of discretion, according to circumstances. An inflexible rule, that a trustee for the payment of debts, must under all circumstances sell for cash, might at times prove disastrous to the interests of creditors. Credit may enter largely at times into the business transactions of the country, so that, to realize any thing like a fair value in the sale of property, or perhaps to sell at all, it may be necessary, under some circumstances, that trustees should be allowed the discretion to sell upon credit. In that extensive class of trusts for the payment of debts, and other distribution of property, arising out of the settlement of the estates of deceased persons, and which is regulated by statute, sales of property upon reasonable terms of credit are sanctioned, and even required by the authority of law. And that which is lawful and proper in a trustee who administers on the estate of a deceased person for the payment of debts, cannot be fairly condemned as *unlawful* and *fraudulent* in a trustee who administers on the estate of an insolvent debtor for the payment of his debts.

The objection to the validity of the deed, on the ground of giving this discretion to the trustees, derives no strength from the argument that a trustee may abuse the discretion, and hinder and delay the creditors by a sale upon an unreasonably long credit. If the liability of a trust to abuse, be a ground of objection to the validity of the instrument creating the trust, it would defeat all conveyances in trust; and the absence of authority to sell on credit would be no protection against the misconduct of the

trustee.  The trustees, however, were liable to be restrained,. removed, and to be made personally responsible for any abuse of the trust.  And any of the creditors had the right to invoke the exercise of the judicial power to control or supervise the faithful execution of the trust.

There is no provision on the face of this deed of trust, therefore, which invalidates it on the ground of fraud.  And as it was made for the equal benefit of all the grantor's creditors, it is not affected by the circumstance that it prevented, and was probably designed to prevent, some of the creditors from getting prior liens on the property by judgments about to be taken within a few days after the execution of the conveyance.  And the circumstance, that the wife of the grantor joined in the deed releasing her right of dower, thereby placing the creditors in a better situation than they could have been in by a sale of the property on execution, strongly repels the presumption of fraud in this transaction.

The design of the assignor to prefer his own creditors, to whom he was liable as principal debtor, before those to whom he was liable as surety for others, which is in proof, does not vitiate the deed.  A mere intention or declaration of such design can amount to nothing, since no such provision was inserted in the deed.  The deed puts all the grantor's creditors on the same footing.  But had such a provision been inserted in the deed, the effect would have been simply to bring the conveyance within the operation of the statute providing, that all assignments of property in trust, made in contemplation of insolvency, with the design to prefer one or more creditors to the exclusion of others, shall enure to the benefit of all the creditors in proportion to their respective demands.

*Bill dismissed with costs.*

NOTE.—The case of *Conkling and Shepherd* v. *Crum, Trustee of Coonrod,* reported in 6 O. St. Rep. 611, which is in accordance with the doctrine of this case, on the question of the validity of an assignment or deed of trust by a failing debtor for the benefit of his creditors, was reported and published before the opinion of the court in this case was written out.